**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000132
29-JUL-2016
07:58 AM**

NO. CAAP-13-0000132

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
RAINIER ACACIO, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 12-1-0049)

SUMMARY DISPOSITION ORDER
(By:  Nakamura, Chief Judge, and Leonard and Reifurth, JJ.)

The State of Hawaiʻi charged Defendant-Appellant Rainier Acacio with two offenses arising out of an incident in which Acacio pointed a knife at his former girlfriend and complaining witness ("CW") during a New Year's party at the couple's residence.  After a three-day trial, a jury found Acacio guilty of the first offense, Terroristic Threatening in the First Degree, in violation of Hawaii Revised Statutes ("HRS") § 707-716(1)(e) (Supp. 2011),[1] and not guilty of Abuse of Family or Household Members, in violation of HRS §§ 709-906(1), -(5) (Supp. 2011).  Acacio appeals from the Judgment of Conviction and Probation Sentence entered by the Circuit Court of the First Circuit ("Circuit Court") on February 4, 2013.[2]

On appeal, Acacio contends the Circuit Court erred when it: (1) precluded Acacio from questioning the CW on her knowledge

---

[1]     That statute states, in relevant part: "A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening . . . [w]ith the use of a dangerous instrument[.]"  Haw. Rev. Stat. § 707-716(1)(e).

[2]     The Honorable Edward H. Kubo, Jr. presided.

of Acacio's immigration status and the consequences of his arrest in order to establish her motive to lie; and (2) denied Acacio's motion for a mistrial when the State violated Hawai'i Rules of Penal Procedure ("HRPP") Rule 16 by failing to disclose Acacio's statement to Honolulu Police Department Officer David Tataki on the night of the incident.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments they advance and the issues they raise, we resolve Acacio's points of error as follows and affirm.

(1) Acacio's first argument is that the Circuit Court erred when it precluded him from questioning the CW concerning her knowledge of his immigration status and about the consequences he faced if he were arrested in order to establish the CW's motive to lie. We disagree.

Acacio refers to *State v. Balisbisana*, 83 Hawai'i 109, 924 P.2d 1215 (1996), and *State v. Marcos*, 106 Hawai'i 116, 102 P.3d 360 (2004) in support of his argument. In those cases, however, the trial courts erred in precluding the defendants from cross-examining the complaining witnesses as to potential bias or motive. The Circuit Court here does not repeat that mistake.

The Hawai'i Supreme Court has established that bias, interest, and motive are always relevant under Hawai'i Rules of Evidence ("HRE") Rule 609.1. *State v. Levell*, 128 Hawai'i 34, 40, 282 P.3d 576, 582 (2012) (quoting *State v. Estrada*, 69 Haw. 204, 220, 738 P.2d 812, 823 (1981)). "[T]he trial court's discretion to exclude evidence under HRE Rule 403 only becomes operative after the threshold level of inquiry under the confrontation clause has been afforded." *Id.* (citing *Balisbisana*, 83 Hawai'i at 114, 924 P.2d at 1220). Here, Acacio was afforded a level of inquiry on cross-examination sufficient to satisfy the confrontation clause of the Sixth Amendment to the U.S. Constitution.

"The Sixth Amendment is satisfied where sufficient information is elicited to allow the jury to gauge adequately a witness' credibility and to assess his [or her] motives or possible bias." *Balisbisana*, 83 Hawai'i at 114, 924 P.2d at 1220

(quoting *United States v. Diaz*, 26 F.3d 1533, 1539-40 (11th Cir. 1994)). In other words, a trial court does not abuse its discretion in excluding evidence tending to impeach a witness "as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness." *Id.* (quoting *United States v. Easter*, 66 F.3d 1018, 1022-23 (9th Cir. 1995)).

In the instant case, although the Circuit Court did not allow Acacio to cross-examine the CW specifically regarding her knowledge of his immigration status, the Circuit Court did allow Acacio to cross-examine the CW concerning her general understanding that if Acacio got arrested, he would leave their shared residence. That is, the Circuit Court permitted Acacio to establish through the CW's testimony that she wanted Acacio out of the house; that, if he was arrested, he would leave; that she was angry that Acacio remained in the house after she asked him to leave; and that she had been angry shortly before she spoke to police officers. Each of these topics relates to the CW's alleged bias or motive to lie. Thus, the Circuit Court complied with the Sixth Amendment and provided Acacio with ample opportunity to cross-examine the CW to demonstrate her bias or motive to lie. *See Levell*, 128 Hawai'i at 40, 282 P.3d at 582 (citing *Balisbasana*, 83 Hawai'i at 114, 924 P.2d at 1220).

Because Acacio was afforded the threshold level of inquiry under the confrontation clause, the Circuit Court was then permitted to exercise its discretion under HRE Rule 403 and balance the prejudicial effect against the probative value of exposing the jury to evidence that Acacio's arrest could result in his deportation because he was not a citizen. We conclude that the Circuit Court did not abuse its discretion in excluding the proffered evidence. The probative value of the proffered evidence to show the CW's motive and bias to testify falsely was attenuated and weak. The CW's knowledge of the potential deportation consequences of her testifying falsely did not show or provide a persuasive explanation for why she would testify falsely. In any event, the proffered evidence was cumulative of evidence permitted by the Circuit Court—that the CW knew that

Acacio's arrest would require him to leave her house. On the other hand, as the Circuit Court noted, questions concerning the penalty or punishment a defendant may face are not proper subjects for the jury to consider. In addition, a jury's verdict cannot be based on sympathy for the defendant. The proffered evidence created a substantial risk that the jury would be unduly influenced or distracted by concerns that a finding of guilt would lead to Acacio's deportation—an improper subject for the jury to consider. As such, the Circuit Court did not abuse its discretion in concluding that the prejudicial effect of the excluded evidence substantially outweighed its probative value. Therefore, the first point of error fails.

(2) Acacio's second argument on appeal is that the Circuit Court abused its discretion in denying Acacio's motion for a mistrial, he claims, where (a) the State violated HRPP Rule 16 by failing to disclose Acacio's statement to the defense; and (b) the Circuit Court failed to hold a voluntariness hearing on the admissibility of the statement prior to its presentation to the jury as required by HRS § 621-26. We disagree.

(2)(a) It is undisputed that the State violated HRPP Rule 16 by failing to disclose Acacio's statement to Officer Tataki, that "they just had an argument," during discovery. Acacio contends, however, that the Circuit Court abused its discretion when it denied Acacio's motion for a mistrial as a necessary sanction for this violation.[3] Under HRPP Rule 16, the State must disclose certain information to the defendant's attorney, including "any written or recorded statements and the substance of any oral statements made by the defendant," Haw. R. Pen. P. 16(b)(1)(ii), and if the State fails to do so, the trial court has discretion to administer sanctions to remedy the

_____

[3] Acacio argues that he was prejudiced because the statement affected his trial strategy which was based "on the premise that there was no argument between himself and [the CW] that precipitated the alleged incident." Further, Acacio noted that he was not adequately prepared to cross-examine Officer Tataki because he was unaware of the statement, and that the admission of the statement directly influenced his decision to testify in order to contradict Officer Tataki's testimony. In support, Acacio cites to HRPP Rule 16, but provides no other authority to demonstrate the Circuit Court's abuse, and we find none.

4

violation pursuant to HRPP Rule 16(e)(9).[4/]

> A court does not

>> abuse[] its discretion in handling a HRPP Rule 16 violation . . . "if after finding a violation of the rule, the court takes measures to alleviate any prejudice. . . ." *State v. Miller*, 67 Haw. 121, 122, 680 P.2d 251, 252 (1984). [B]efore the court orders dismissal of a case because of the State's violation of HRPP Rule 16, it must consider whether less severe measures would rectify prejudice caused to the defendant by the violation. *[State v.] Dowsett*, 10 Haw. App. [491,] 495, 878 P.2d [739,] 742; *see State v. Sugimoto*, 62 Haw. 259, 262, 614 P.2d 386, 389 (1980) (stating that "[a] violation of [HRPP] Rule 16 does not warrant an immediate declaration of a mistrial by the trial court" and noting that HRPP Rule 16 authorizes the court to impose remedies less severe than a mistrial).

*State v. David*, 134 Hawai'i 289, 298, 339 P.3d 1090, 1099 (App. 2014) (footnote omitted), *cert. granted*, No. SCWC-12-0000109, 2015 WL 919260 (Hawai'i March 3, 2015). Here, after determining that the State violated HRPP Rule 16, the Circuit Court took corrective measures by offering Acacio the opportunity to recall Officer Tataki at anytime prior to resting his case and also, in the event Acacio had additional questions to ask Officer Tataki, additional time to prepare. Acacio, however, declined to recall Officer Tataki.

Moreover, viewed in context, we conclude Officer Tataki's testimony that Acacio said "they just had an argument" did not prejudice Acacio's substantial rights. Acacio's own version of his interaction with the CW—that the CW was angry, gave him "stink eye" and refused to talk to him about their relationship, told him to go ahead and kill himself, and yelled at him when he touched her face and stomach—can fairly be characterized as "an argument." Thus, the State's violation of HRPP Rule 16 was harmless error.

Although Acacio argues that the undisclosed statement affected his trial strategy, the record shows that there was

---

[4/]    Rule 16 of the HRPP states, in relevant part:

> If at anytime during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may order such party to permit the discovery, grant a continuance, or it may enter such other order as it deems just under the circumstances.

Haw. R. Pen. P. 16(e)(9)(i).

substantial circumstantial evidence even without the statement to demonstrate that "they [(Acacio and the CW)] just had an argument." *See generally State v. Torres*, 122 Hawai'i 2, 13, 222 P.3d 409, 420 (App. 2009) (citing *State v. Murphy*, 59 Haw. 1, 19, 575 P.2d 448, 460 (1978) (explaining that "[i]t is elementary that a criminal case may be proven beyond a reasonable doubt on the basis of reasonable inferences drawn from circumstantial evidence.")). Indeed, the CW testified that Acacio was "mad" and that "[h]is eyes [were] emotional," prior to the incident. Moreover, she testified that Acasio told her that he was going to kill himself, proceeded to retrieve a knife from the kitchen, pointed it at himself while stating that he was going to kill himself, but that she responded that she did not care. Officer Tataki also testified that when he arrived at the house, Acacio appeared to be upset and after CW opened the door "[s]he was crying and [seemed to be] afraid." Furthermore, Acacio's own direct testimony provides circumstantial evidence that he and the CW were fighting because Acacio told the jury that he touched the CW's face "to calm [her] down because she was yelling" at him to "[g]et out of here" and locked herself in the bathroom, and that when the police officers came into the house Acacio "was crying, and [he] was hurt by what [CW] did to [him]." In light of this testimony and the Circuit Court's offers to allow Acacio to recall Officer Tataki and have extra time to prepare for such a recall, the statement that "they just had an argument" was not prejudicial and did not merit a mistrial. Accordingly, the Circuit Court did not abuse its discretion in denying Acacio's subsequent motion for a mistrial.

(2)(b) Acacio also asserts that the Circuit Court erred when it did not hold a voluntariness hearing on the admissibility of the statement, as required by HRS § 621-26, prior to its presentation to the jury. As previously noted, the admission of Acacio's statement that "they just had an argument" was not prejudicial and did not affect his substantial rights. Therefore, any error in failing to hold a voluntariness hearing was harmless and did not contribute to Acacio's conviction.

Therefore, the February 4, 2013 Judgment of Conviction and Probation Sentence entered by the Circuit Court of the First Circuit is affirmed.

DATED:   Honolulu, Hawai'i, July 29, 2016.


On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.


Brian R. Vincent,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge